ROBERT B. MEYNER, GOVERNOR OF THE STATE OF NEW JERSEY, *ET AL.*, PLAINTIFFS-RESPONDENTS, v. BURLINGTON-BRISTOL BRIDGE COMPANY, *ET AL.*, DEFENDANTS-RESPONDENTS; DWIGHT, ROYALL, HARRIS, KOEGEL & CASKEY, PETITIONER-APPELLANT.

Argued October 21, 1957—Reargued January 19, 1959—
Decided February 16, 1959.

*Mr. Frederick W. R. Pride,* of the New York Bar, argued the cause *pro hoc vice* for the petitioner-appellant (*Messrs. Milton M.* and *Adrian M. Unger,* attorneys; *Messrs. Frederick W. R. Pride* and *Donald J. Nugent,* of counsel and on the brief).

*Mr. Robert L. Hood* argued the cause for the defendant-respondent Burlington County Bridge Commission (*Messrs. Robert L. Hood* and *Thomas D. Begley,* attorneys).

The opinion of the court was delivered by

BURLING, J.  This is a claim for attorneys' fees alleged to be owing petitioner from a fund paid into the Superior Court, Chancery Division, following an action in New York instituted by receivers appointed pursuant to an order of the Superior Court, Chancery Division, 10 *N. J. Super.* 545, entered in accordance with the mandate of this court in *Driscoll v. Burlington-Bristol Bridge Co.,* 8 *N. J.* 433 (1952), *certiorari* denied *Burlington County Bridge Commission v. Driscoll,* 344 *U. S.* 838, 73 *S. Ct.* 25, 97 *L. Ed.* 652 (1952), rehearing denied 344 *U. S.* 888, 73 *S. Ct.* 181, 97 *L. Ed.* 687 (1952).

The essential background facts may be found in the opinion of this court in *Driscoll v. Burlington-Bristol Bridge Co., supra.*

Petitioner is a partnership regularly engaged in the practice of law in New York City, New York.  In January of 1954, petitioner was retained to defend Theodore R. Hanff, Rowland H. Murray and Thomas J. Christensen in an action brought in the New York Supreme Court on January 4, 1954, by David J. Connolly and William H. Wells, as receivers appointed as aforesaid.  The receivers instituted the New York action to collect the final judgment against the

defendants entered March 14, 1952, in favor of the Burlington County Bridge Commission.

The partnership of Ketcham & Nongard (hereinafter the partnership entity will be referred to as Ketcham & Nongard) was added as a defendant in the New York action on May 26, 1954, and on June 3, 1954 the receivers caused warrants of attachment to be issued in New York pursuant to which a fund of $1,170,319.80 in the hands of B. J. Van Ingen & Co., Inc., which was owing to the partnership of Ketcham & Nongard, was attached. Petitioner was retained to defend Ketcham & Nongard and the fees which it here seeks to have paid represent its charge to the partnership for services rendered in that litigation.

Without detailing the procedural course of the New York action, the results may be summarized as follows: The Appellate Division of the Supreme Court [*Connolly v. Bell*, 286 *App. Div.* 220, 141 *N. Y. S. 2d* 753], on appeal from a summary judgment entered in favor of the receivers, adjudged that the New Jersey judgment ran against the partnership of Ketcham & Nongard and that Ketcham & Nongard was liable to the receivers for the sum of $4,117,996.83. This sum represented $3,283,024.26 being the yet unpaid amount plus interest on the New Jersey judgment for $3,050,347.00, and $834,972.57, being the amount that the Bridge Commission paid to the Chemical Bank & Trust Company as pledgee of bonds owned by Ketcham & Nongard and for which payments the Bridge Commission was subrogated to the rights of the Chemical Bank & Trust Company under the provisions of the New Jersey judgment.

A further appeal was taken on behalf of the defendants to the New York Court of Appeals. That court reversed the portion of the judgment appealed from which adjudged that the partnership of Ketcham & Nongard was liable to the receivers for $3,283,024.26. The New York Court of Appeals was of the view that the portion of the New Jersey judgment which reads:

"To the extent that the members of the selling syndicate or their nominees have an interest therein, the entire transaction in all its

ramifications is rescinded and they shall repay to the bridge commission the sum of $3,050,347 which represents the gross profit which they received from the sale of their stock in the Burlington-Bristol Bridge Company. The obligation to repay this sum shall be both joint and several as to Bell, Hanff, Ketcham, Nongard and Powell, but shall be several only as against the remaining sellers in the amounts they each received, specifically: Rowland H. Murray—$76,258.68; Thomas J. Christensen—$305,034.70; Irene E. Powell—$122,013.88; Paul A. Powell—$122,013.88; Mildred P. Meader—$122,013.88; Rickard W. Parks and Gladys A. Parks—$129,939.75. Judgment in the sums indicated, together with interest thereon from October 22, 1948, will accordingly be entered against these defendants and in favor of the bridge commission." (8 *N. J.* at *page* 501)

only ran against the individuals Ketcham and Nongard and not against the partnership. *Connolly v. Bell,* 309 *N. Y.* 581, 132 *N. E. 2d* 852 (*Ct. App.* 1956).

On June 30, 1954 (while the New York action was pending) the Superior Court of New Jersey entered an order directing Van Ingen to pay over to the receivers the disputed fund of $1,170,319.80 owing to Ketcham & Nongard. The order directed the receivers to maintain a special and separate bank account for the sum and reserved to the defendants all their rights in the fund. Van Ingen and the attorneys for the receivers then entered into an agreement on September 27, 1955 whereby the receivers authorized the Sheriff of New York County to release the fund and Van Ingen then paid over the sum of $1,158,616.60 (after deducting $11,703.20 for poundage fees payable to the Sheriff) to the receivers. After the decision in the New York Court of Appeals, Van Ingen petitioned the New Jersey Superior Court, Chancery Division, for an order enjoining and restraining Ketcham & Nongard from instituting proceedings designed to enforce its claim against Van Ingen and requiring all persons asserting any claims in said fund to present their claims to the Superior Court within such time as the court should determine.

On November 5, 1956 petitioner filed a claim for counsel fees of $35,505 plus unreimbursed disbursements of $986.01. The reasonableness of the fee has not been controverted.

Petitioner's contention was that the counsel fees should be paid to petitioner out of the excess of funds over the $834,972.57 adjudged by the New York Court of Appeals to be owing by the partnership of Ketcham & Nongard, and prior to any distribution of the excess to the receivers as individual creditors.

After hearing, Judge Sullivan denied petitioner's claim on the ground, *inter alia,* that the New Jersey judgment did run against the partnership of Ketcham & Nongard for the full amount of the gross profits made by the bridge selling syndicate. Subsequently a rehearing was held and Judge Sullivan again denied petitioner's claim. The monies were directed to be paid over to the Burlington-Bristol Bridge Commission, which was directed to hold in a special escrow account the sum of $40,000 as a contingent fund for the payment of counsel fees in the event that petitioner prevailed on appeal.

Petitioner prosecuted an appeal to the Superior Court, Appellate Division, and while pending there this court certified the cause on our motion. The cause was initially argued on October 21, 1957.

On the initial argument before this court, petitioner's contentions were: (a) the adjudication by the New York Court of Appeals as to the liability of the partnership of Ketcham & Nongard under the New Jersey judgment is *res judicata* and binding and conclusive upon the parties and (b) that petitioner as a partnership creditor is entitled to priority over the receivers as creditors of Ketcham and Nongard, individually, in the excess over the amount which the New York court adjudicated was the partnership's liability.

This court after the original argument was of the view that it might be unnecessary to decide the question of (a) whether the New York adjudication construing the New Jersey judgment must be afforded *res judicata* effect or whether it must be afforded full faith and credit, and (b) whether the final judgment entered in *Driscoll v. Burlington-Bristol Bridge Co., supra,* was intended to im-

pose liability for the full amount of the illegal profits in the sale of the bridges against the partnership of Ketcham & Nongard, as distinct from the individual partners.

To that end the cause was remanded to the Superior Court, Chancery Division, for further testimony and findings with respect to 11 questions propounded by this court. The matter was ordered to remain on appeal, with the additional testimony and findings to be returned to this court. Thereafter the parties entered into a "Stipulation of Facts" dated April 30, 1958 and filed May 2, 1958. Judge Sullivan disagreed with some of the stipulations and made independent findings where he was of the view that the stipulation was not factually accurate.

The first two questions propounded by this court were:

"1. Were the moneys held by Van Ingen & Co., and attached in New York the fruit of the transaction declared invalid in *Driscoll v. Burlington-Bristol Bridge Company*, 8 *N. J.* 433 (1952)?

2. If not, what was the origin of those funds?"

The corresponding stipulation of the parties is as follows:

"1. The moneys owed by Van Ingen & Co., to the partnership of Ketcham & Nongard, which were attached in the New York action as a debt owing to the partnership, amounted to $1,170,319.80. Of this amount $1,000,000 is traceable to moneys paid by the Burlington County Bridge Commission to certain of the selling stockholders.

2. Of the remainder of this indebtedness the sum of $74,232.80 in no sense is traceable to the funds received by the selling stockholders from the Burlington County Bridge Commission, or to any funds or moneys paid by the Burlington County Bridge Commission in connection with the transaction which was held to be invalid. This sum arose in the following manner: On October 22, 1948, Van Ingen and the partnership of Ketcham & Nongard entered into arrangements with each other and with the Burlington County Bridge Commission to purchase the $12,400,000 of bonds issued by the Commission. This purchase was originally financed through borrowings from the Chemical Corn Exchange Bank (formerly Chemical Bank & Trust Company). Van Ingen, in association with the partnership of Ketcham & Nongard, then undertook to form a syndicate of bankers and bond houses to take over the bonds and ultimately to distribute them. Sixteen other firms joined with Van Ingen and the partnership of Ketcham & Nongard to form the 'bond syndicate.' Thereupon Van Ingen and the partnership of Ketcham & Nongard, as Syndicate Managers, and as the original

joint purchasers of the bond issue, sold the bonds to the syndicate on October 27, 1948, at a price which was $185,582 in excess of the price at which the bonds had been purchased from the Bridge Commission. This 'step-up' in price is a customary procedure in the formation and operation of syndicates which take over the distribution of bond issues. This 'step-up' thus resulted in a profit to Van Ingen and the partnership of Ketcham & Nongard. Under the agreement between them, Van Ingen was entitled to 60% of any such profit resulting from the 'step-up' in price and the partnership of Ketcham & Nongard was entitled to 40%. Hence, the amount of $74,232.80 represents 40% of the aforesaid sum of $185,582 and arose solely by reason of the arrangements indicated above. The foregoing facts are set forth in the affidavit of Frank Mallin, the treasurer of Van Ingen, sworn to April 28, 1958, and attached hereto.

The difference between the total indebtedness of Van Ingen to Ketcham & Nongard in the sum of $1,170,319.80 and $1,074.232.80 (representing the $1,000,000 traceable to moneys received by certain of the selling stockholders plus the aforesaid sum of $74,232.80) amounting to $96,087.00 represents interest allowed by Chemical Bank & Trust Company on those principal payments made by the partnership of Ketcham & Nongard which inured to the benefit of Van Ingen and Co. and interest payments made by the partnership of Ketcham & Nongard which inured to the benefit of Van Ingen & Co."

Upon reargument petitioner directed its claim solely to the item of $74,232.80, the partnership's share of the "step-up" in the price described in the foregoing stipulation, asserting that sum to be free of the taint of fraud. The trial court disagreed with the stipulation of facts and specifically found that the profit on the bonds of $74,232.80 was the fruit of the transaction. The disagreement is not one based essentially on the underlying facts, but rather what might be termed the characterization of those facts: whether they give rise to a semi-factual semi-legal conclusion that the $74,232.80 owing to Ketcham & Nongard and representing a "step-up" in price on the sale of the bonds by Ketcham & Nongard and Van Ingen to the bond selling syndicate, was the fruit of the illegal transaction between the original syndicate and the Bridge Commission. We think the conclusion from the undisputed facts is unquestionably that it was. The financial transactions were in detail as follows:

Ketcham & Nongard agreed to purchase the entire bond issue, and to do so it and B. J. Van Ingen & Co. borrowed $12,422,866.40 from Chemical Bank & Trust Company on notes secured by a pledge of the bonds. The loan was immediately credited with $355,710 representing the bond discount payable to Ketcham & Nongard as its fee in the transaction. Ketcham & Nongard made an additional payment of $600,000 on account of the notes—this money being part of the profits of the bridge selling syndicate. Thereafter, Ketcham & Nongard and Van Ingen organized a bond selling syndicate consisting of 18 members to dispose of the bridge bonds. The syndicate borrowed $11,317,156.40 from Chemical on a pledge of the same bonds and paid off the note of Ketcham & Nongard and Van Ingen. Ketcham & Nongard agreed to purchase (probably for resale) 10% of the bonds.

This court in the *Burlington-Bristol Bridge* case, *supra,* held that Ketcham & Nongard was an active participant in the bridge selling syndicate and that therefore the bonds owned by Ketcham & Nongard ($1,240,000) were declared null and void, except to the extent of Chemical's rights as pledgee.

Ketcham & Nongard made payments against the bond syndicate's bank loan of principal and interest, this money again stemming in the main from the illegal profits of the bridge selling syndicate.

By February 15, 1954 Chemical had received sufficient monies from the Bridge Commission and the bond selling syndicate to pay off the balance of the bond syndicate's note. The bonds were released to the syndicate (Ketcham & Nongard's 10% interest being cancelled pursuant to the New Jersey judgment) and were sold by the syndicate on the open market. Upon the sale of the bonds the syndicate determined that Ketcham & Nongard was entitled to credits and commissions out of the proceeds of the sale. These credits amounting to $1,170,319.80 owing from Van Ingen to Ketcham & Nongard form the basis for the fund currently in dispute.

Thus, the naked elements of the transaction were as follows: Ketcham & Nongard was invited into the bridge selling syndicate in order to arrange the finances for the transaction. Obviously the plan which resulted in fraud at the expense of the public could not be effectuated without some means of converting the Bridge Commission bonds into ready cash. That the success of the bridge selling syndicate was inextricably intertwined with the success of the bond selling syndicate is indisputable, as is the fact that the partnership of Ketcham & Nongard was a prime mover in both. Can it be said that the partnership profit of $74,232.80 on the sale of these bonds to the syndicate is not the fruit of the transaction? The answer is self-evident that it is.

Once the taint from the source of the fund currently before the court is uncovered, then upon universally established equitable principles, the petitioner's claim falls. And this conclusion is arrived at irrespective of the answer to the question of whether the New Jersey judgment imposing liability for the gross profits on the sale of the bridge stock to the Bridge Commission ran against the partnership as well as the individual partners.

There can be no doubt of the active participation of the partnership of Ketcham & Nongard in the fraudulent activities of the bridge selling syndicate. The references thereto may be found in Mr. Chief Justice Vanderbilt's careful analysis of the complicated maneuverings of the bridge selling syndicate in the opinion in *Driscoll v. Burlington-Bristol Bridge Co., supra,* at 8 *N. J.* 468, 471, 481, 484, 486, 497, 501 and 502.

Ketcham & Nongard, being an active participant in the fraudulent plan, was in equity regarded as a constructive trustee of the profits actually coming into its hands, irrespective of whether the partnership as such was liable for the full amount of the gross profits recoverable at law, pursuant to the New Jersey judgment. See *e. g., Driscoll v. Burlington-Bristol Bridge Co.,* 28 *N. J. Super.* 1 (*App. Div.* 1953); *Moses v. Moses,* 140 *N. J. Eq.* 575, 173 *A. L. R.* 273 (*E. & A.* 1947); *Hochman v. Zigler's, Inc.,* 139 *N. J. Eq.* 139 (*Ch.*

1946) ; *Roy v. Enot, 120 N. J. Eq. 67 (Ch. 1936)* ; *General Motors Acceptance Corp. v. Larson, 110 N. J. Eq. 305 (Ch. 1932)* ; *Restatement, Trusts* § 1, *comment (e)* (1935) ; *Restatement, Restitution,* §§ 160, 166 (1937) ; 4 *Scott, Trusts (2d ed.* 1956), §§ 461, 468. And see 4 *Scott, supra,* §§ 503, 508 ; *Restatement, Restitution, supra,* § 202.

As of the time the fund was paid to the receivers, Van Ingen knew of the role of Ketcham & Nongard and of this court's finding of the partnership's fraudulent participation made in the *Burlington-Bristol Bridge* case, *supra.* Had the moneys reached Ketcham & Nongard it would have received them as a constructive trustee ; and Van Ingen, having the knowledge referred to, could hardly have paid Ketcham & Nongard with safety. It was quite appropriate therefore that the funds reached the jurisdiction of a court in which the rights of the receivers and any other claimant thereto could be adjudged.

The petitioner, as a partnership creditor, cannot claim a superior right to the receivers in the fund. Where, as here, the misappropriated property and its fruit can be traced, the creditors of the wrongdoer have no rights therein. Creditors of the wrongdoer, not being purchasers for value, cannot have any claim to the property. 4 *Scott, supra,* §§ 508, *p.* 3252, 521, *pp.* 3325–3326 ; *Restatement, Restitution,* § 173, *comment (j).*

Additionally it might be noted that petitioner, in defending the action in New York, must have been cognizant of the culpable status of the partnership as delineated in the opinion in the *Burlington-Bristol Bridge* case, *supra.* In short, petitioner became a creditor of the partnership with knowledge, actual or constructive, of the fraud. Thus, even if the partnership had *paid* the petitioner out of the fund, petitioner would be required to account to the receivers. 4 *Scott, supra,* § 477 ; *Restatement, Restitution,* §§ 168, 174, *comment (a)* ; 4 *Pomeroy, Equity Jurisprudence,* § 1048. *Cf. State by Parsons v. Fidelity Union Trust Co.,* 25 *N. J.* 387 (1957).

For the reasons advanced in this opinion the judgment below is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—6.

*For reversal*—Justice HEHER—1.